Can you call for us, please? Yes. Pinnacle Real Estate Investments Group, LLC at Law v. Patrick Boutros at Law. Good afternoon. Would both lawyers please stand and just tell us your names? Good afternoon, Your Honor. Patrick Crook, C-O-O-K-E, on behalf of the appellants. Good afternoon. Benjamin Haskin, H-A-S-K-I-N, on behalf of the appellees. All right. Gentlemen, as you know, you each have 20 minutes. Mr. Crook, would you like to save some part of that time for rebuttal? I would, Your Honor. I'd like to reserve three minutes. Okay. And just ask you both to keep your voices up nice and loud, all right? You may be seated, and you may begin, Mr. Crook, whenever you're ready. May it please the Court, good afternoon. I represent the appellants in this matter, Pinnacle Real Estate Investments Group, Andrew Holmes, Royal Vassal. I refer to the appellants in the briefs in order today as the Pinnacle Parties. I refer to the appellees in the briefs in order today as the Boutros Parties. We are here today in connection with a motion to compel arbitration, which was granted by the trial court. The arbitration provision at issue was contained in the settlement agreement, was identified in the settlement agreement, a settlement that was reached between the same two sets of parties, the Pinnacle Parties and the Boutros Parties, in connection with previous litigation, another lawsuit that began in January of 2017. If I could just interrupt you real quick. The issue here is you're saying that they filed the request for arbitration too late. That's correct, Your Honor. And my question is, as long as you're talking about the settlement agreement, did the settlement agreement contain a term that would have a requirement on – I mean, it had the two-week requirement that you couldn't file before that. But did it have a term in it that – a deadline, that if you didn't file it by then you waived it? The settlement agreement I'm talking about. Now, that won't get into the e-mails, you know. Of course. You will. Thank you. So as to that point, Your Honor, is there a sentence in the settlement agreement that says this is a deadline? No. But I do believe it was expressly identified in the arbitration provision, which must necessarily be read in conjunction with that provision addressing the singular issue that is arbitrable in the settlement agreement. It's an interesting settlement agreement, right? No provision in this agreement, this contract, was not arbitrable save for one specific issue. Just one. And that was related to what the parties had identified as reconciliation number two. In reconciliation number two, they gave themselves the opportunity to negotiate and work out issues related to cash flow, due to, due from, related to the joint ventures. And that was to occur in 13 days' time. It says within 14 days. Within 14 days. In 13 days' time after signing the settlement agreement. So the settlement agreement was signed June 29. 13 days thereafter, they were to have concluded any discussions or negotiations relative to reconciliation number two and the issues incident to reconciliation number two by July 12. In the arbitration provision, paragraph three of the settlement agreement. So reconciliation number two says if you can resolve it, then it shall be resolved definitively by binding arbitration as defined and delineated more fully and carefully in paragraph three, the arbitration provision. It's not so you don't believe it reads that you need to wait before you attempt arbitration. That's exactly right, Your Honor. And the language in the arbitration provision underscores that very point. Because when you go back to paragraph three of the arbitration provision, it's not your usual arbitration provision either, right? It's a speed arbitration provision. It says it shall be initiated no earlier than 14 days. That sentence does, Your Honor. And what that does is underscores and reaffirms the language in reconciliation number two in which the parties agreed they were going to have 13 days to negotiate. Right. After 13 days, then day 14, the arbitration was to be commenced for filing. And July 12th is actually day 13, correct? Right. So you're supposed to pick the arbitrator as day 13. That's correct. And when you read further down in that arbitration provision, that paragraph three, as you just alluded to, Justice McCloud, the specific date of July 12th is identified, a specific date, an arbitrator selection date of July 12th. That's day 13. The reason a specific date for selecting the arbitrator was identified in that provision because the parties negotiated, anticipated, expected, and wrote into that settlement agreement that an arbitration was going to be commenced on day 14. Now, while it could have been more artfully drafted and could have been perhaps better fleshed out with some of the language, it is clear by those two points, though. One, there are 13 days to negotiate, and then it says right in the arbitration provision, no earlier than day 14 can you file this arbitration. But day 14, it was anticipated and expected that the parties would file that arbitration and had to because an arbitrator had to be selected by July 12th. I guess going back to Justice Griffin's question, is your position that it's actually in the settlement agreement or that the settlement agreement was modified by the e-mails? Right. Both. Okay. It is in the settlement agreement. Good way of answering. That's fine. I mean, that's fine. You would argue either or. Right. And I would say this, and I conceded this, I believe, in the briefs, both below the end in this court. It could have been more artfully drafted. There's no question as to that. But when you read the arbitration provision in conjunction with the Language and Market Solution No. 2 and then go down to the bottom of that particular paragraph and identify the specific date for selection of an arbitrator, the only reason to do that is because it was anticipated that the next day an arbitration had to be filed. And if it didn't, if it meant something else, it wouldn't have had a specific date. It would have simply said the day before the party, the moving party, initiates an arbitration, the parties are to agree on an arbitrator. And if they can't, then the moving party or the party filing the arbitration can select from one of the files. Why did it go from one-day difference to two-weeks difference or 15-days difference as you were modifying it through these e-mails? If there's something, I don't know if you can answer that with anything in the record, but that was confusing. And that's a fair question, Your Honor. So I was not part and parcel to the initial negotiations. I came in on the end. A predecessor of mine had negotiated and was engaged in the e-mail communications. You saw his name in the record, Attorney Tom Berticchio. And I came in in September of 2017 and continued in those discussions. I will say this, and I'm not sure if it's in the record, but it is certainly from the affidavit I filed along with my client. The reason more time was allowed, we just needed more time. Well, it was very clear that this settlement agreement was going to have not just a full and final separation of parties, but all of the parties desired that very fact to occur very quickly, right? There was going to be separation quickly. It wasn't going to drag on. It wasn't going to continue on, which is why there was a speed arbitration clause, which is why reconciliation number two started with only 13 days to get this done. Well, as it turns out, the parties, the lawyers are both, needed a little more time. And so in connection with the foregoing, additional modifications were made to that time period, just extending the time within which to, one, conclude the negotiations, and then, of course, file the arbitration demand, which was, from the pinnacle parties' perspective, clearly delineated in paragraph three. You had a July 13th file date. That was what's there. It doesn't say it exactly, and as I said, it could have been more awfully drafted in that respect, but it's there. So are you saying this is ambiguous? No. I think it's clear. But to the extent anyone believes it was, that ambiguity was dealt with directly by the modification emails. There were four emails that followed July – well, actually, the first was sent on July 12th. So July 12th, you'll note, was the day before the day that the arbitration was to be selected, because an arbitration was to be filed the next day. July 12th was the first email that was sent by Mr. Peticchio in which they simply addressed the selection of the arbitrator. We're going to put that off. It'll look like approximately a week. So let's continue that. We're still engaged in these discussions and negotiations. And they did that. The police seems to disagree with you on the standard of review. You believe the standard of review is one of law, and they believe that it's an abuse of discretion. It most certainly is de novo. It is most certainly one of law. The trial court reviewed nothing but the contract, the settlement agreement, the modification emails, and nothing more. There were no affidavits. No evidentiary hearing. No affidavits. Nothing. Absolutely nothing. No affidavits were supplied by the brutalist parties. The petition that was filed wasn't verified.  That's absolutely correct, and the modifications to the agreement. Those were included with the response that I filed to the motion to compel arbitration. Did the trial court actually make any findings of fact here? Well, I think in principle he did, but not expressly. Not expressly expressed. No, no, which was also problematic and addressed by the briefs as well, Your Honor. Hasn't the fact that Mr. Peticchio's first email doesn't say anything about extending the date for an arbitration demand suggest that there was no deadline for an arbitration demand? Only a deadline for picking the arbitrator? Well, the day for initiating the arbitration, filing the arbitration demand, was the day after the selection of the arbitrator. So he addressed it with the one email, just addressing the selection of the arbitrator. Thereafter... Well, you're saying by saying extend the arbitration selection date, he was also implicitly saying, and extend the arbitration demand date... That's correct. ...to the next day thereafter. That's correct, Your Honor. Okay. And to flesh that out further, the next email communication that was had between Mr. Peticchio and counsel for the appellees back on July 18, they left over. And they also recognized at that time, again perhaps, that the provision could have been a little more fully drafted with a little more time built in and maybe a little more separation between selection of arbitrator and filing arbitration demand. To that end, they created that time. So Mr. Peticchio wrote the appellees and there said, we're extending the date to select the arbitrator to August 15. And they gave themselves another two weeks then before initiating the arbitration. He goes on to say, we extend the date to initiate the arbitration to August 31, 2017. One word response from the appellees confirmed. Date selecting the arbitrator, date to initiate arbitration. The next month, August 11. It still could be arguably the date, the earliest date you could initiate arbitration. It doesn't say that. No, it doesn't say the latest date either. No, it doesn't say that either. But the natural and ordinary construction of that email and of that language says what it says, Your Honor. Unless you go back and look at the settlement agreement. Well, as I said earlier, I believe the settlement agreement is equally clear. Perhaps not as clear as it could have been, but equally clear. There's a hard date to select an arbitrator. The only reason there would be a hard date to select an arbitrator is because the next day someone is filing an arbitration demand. But that kind of falls apart when you start giving yourself 15 days instead of the next day. Well, they recognize that it may be beneficial to allow a little more time in between. So while the parties were, in particular the parties, were anxious to create separation that was full and final and to do it quickly, perhaps they were overly aggressive in that thought when they put together the settlement agreement and signed it on June 29. That's all. And just to be clear, if you blow the deadline, which I think we all agree there was a deadline for selecting the arbitrator. That's clear. But blowing that deadline just means you're stuck with one of the four arbitrators listed, correct? I mean, it doesn't mean you can't arbitrate. It just says if they fail to do so, the party initiating may select one of these four people. That's correct, Your Honor. The reason the July 12 date is of significance, however, is because if it didn't have any significance that I just talked about, it would have said the day before, three days before, any party initiating an arbitration, the parties shall agree on an arbitrator. And if they can't, then the initiating party can select one of the five. It would have said something like that, but it didn't. It had a hard date that turned out to be exactly 13 days after the signing of the settlement agreement, because on that 14th day, it was anticipated that an arbitration demand was to be filed, if there was no resolution to the issues in Reconciliation No. 2. Back to the modification emails. They go out. And August 11, another exchange. We're extending the arbitrator selection date from August 15 to September 15. We are extending the arbitration filing date from August 31 to September 29. Once again, I agree and confirm. That was the response from the appellees. Now, I will say this. This isn't in the record, but at that time, Mr. Peticchio left the employee of the Sponsor of Minor Value to join the Illinois Attorney General's office. I was coming at the same time as well. That is, I know, because I had this conversation with him, one of the reasons why additional time was built in for those discussions to occur. So it did get a little bit longer, to your point, Justice McGaugh. But there was a reason for this specific extension here, for it to go from two weeks to four weeks. Before you run out of time, I have two questions that are kind of unrelated, but I'm going to put them both out there. One is, one of your arguments is that there are factual issues, but I don't think you were ever clear as to what those factual issues are. The other is, the appellees make an argument that we should remand for calculation of fees on this appeal if we agree with them, and I don't think you responded to that in your brief. So could you respond to both of those? Of course, Your Honor. So first, as to the question of the fact, there's only one party to this proceeding. There's only one party below in the trial court. They could have received a judgment as a matter of law, and that was the pinnacle parties. These four emails that went on, the last one purported by me, it's not by me, identify hard dates. Arbitrator selection dates, arbitration filing dates. There's no good in that. There's no construction to be afforded that. So to the extent that there was a question of law to be decided in favor of one party or another, the only party who would have benefited by that decision could have been or should have been the pinnacle parties, whether it was at summary judgment or in connection with the motion of capital arbitration that the trial court decided. It's the only party that was entitled to that belief as a matter of law. For the brute force parties to prevail at some point, they necessarily would have to jump through a number of hoops and overcome questions of fact and demonstrate questions of fact and prove questions of fact to their benefit in the trial court. Those would include what I just said, for example, these modification emails. But they don't just mean extending the arbitration filing date, as they say. Instead, they mean the earliest date by which to initiate the filing date or they're tethered somehow to reconciliation number two. This was pursuant to reconciliation number two or pursuant to the arbitration provision, paragraph three of the settlement agreement. Of significance here, Your Honors, that language isn't contained in any of the modification emails. They are clear, succinct, and quite frankly, I'm not certain that they could be any more unambiguous. These emails identify hard dates by which two things were to occur. One, a selection of an arbitrator. Two, the filing of an arbitration. That's it. To the extent that Buttrell's parties were to prevail at any level on the motion to compel arbitration or any time after, they would necessarily have to overcome these facts and demonstrate additional facts through testimony, through affidavits, through somehow some evidence supporting their construction that these emails really have more language. You're just not seeing it on the page. And quite frankly, the trial court read additional language into these modification emails in order to reach the conclusion it did. But if it's not ambiguous, you don't go outside the words. And the trial court just got it wrong. I believe it isn't unambiguous to the parochial party's benefit. But to the extent that the Buttrell's parties have an argument to make or could prevail in this matter with respect to the arbitration issue or anything else, there are questions of fact that necessarily had to have been addressed but were not, that would have to be addressed on remand if this court were to decide as such. Was your second question answered? No. But I'm giving you time to do that. I have one more. Go ahead. No, go ahead. My question was, if we disagree with you, don't we need to remand for calculation of fees on this appeal? Aren't they entitled to fees for this appeal? Perhaps. I'm seeking them, so yes. By the way, the attorney fee provision is also a little bit unusual. It's not your typical run-of-the-mill prevailing party provision, just like the arbitration provision was a little bit unusual. Instead- And you weren't around for any of the drafting, so you don't- That's true. But I do know the history and I do know the agreement. The attorney's fee provision also confined the award of attorney's fees to the suit, the commencement of the action, the lawsuit, the action, the matter in which the settlement agreement sought to be enforced. So I addressed the attorney's fees at the closing of each brief as to the award of fees by the trial court. I believe that was there. He discounted them 10 percent, just flatly discounted them 10 percent, without engaging in a more thorough analysis, which this particular attorney fee provision necessarily required. So if- I believe, one, this matter should be reversed, two, that this court, because it is taking this matter up on de novo review, it is a question of law that I would have presented from the political party's perspective, and you do have the ability to enter judgment here, or remand to the trial court for entry of judgment in the political party's favor, consistent with this court's decision. But why would it be in their favor? See, arbitration is an alternative dispute resolution. And if you're not entitled to arbitration, usually you have to go through the normal, not the alternative, you go through the normal. So you go through the trial court and you resolve the dispute. You're asking- you're saying that based on their breach of the deadline, all disputes are fully and finally concluded. I don't understand it. Perhaps I've gone a little bit ahead of myself in that respect, Your Honor. But you have the only agreement that's going to be the subject of construction at the trial court. You have the modification email. It's the same. Eventually someone's going to get to that conclusion, and if it's the court's inclination to remand it for that finding, after reversing the finding of compelling arbitration, then that would be appropriate. But it is nothing more than the settlement agreement and the modification emails from the political party's perspective. And with those two buckets of information and documents, there's only one conclusion that can be reached. It says filing deadline. It says arbitration selection deadline, date. That's it. There's only one conclusion that I believe any court can reach. And so while this court may not be inclined to enter judgment on its own, in that respect, you certainly can, on remand, provide instructions to the trial court based on this court's opinion. Because that is so, Your Honor, we've also done, with respect to the attorney's fees, that they be awarded to, one, defending the motion to compel arbitration below, and, two, with respect to this appeal. Under this particular attorney provision, the parties are entitled to it, and that will be part of the remand, with instructions to the trial court to engage in more thorough analysis of the actual fees that were incurred, when they were incurred, how they were incurred, because the attorney's fee provision in this particular settlement agreement requires it. If this court were to conclude that these modification emails don't exactly say what they say, that the butchers' parties are right, the trial court is right, that additional language can be implied or read into the language of those modification emails. Instead of extending the arbitration filing date, maybe it should have been we're extending the earliest date by which you can file the arbitration. That's what everybody meant. If that's the conclusion, Your Honor, then, respectfully, the contract construction principles will be meaningless here. Meaningless. Contract construction principles are clear. Where there is clear and unambiguous language, documents are, of course, as written. If all a party has to do is say, yes, that's my signature, yes, I agree to that language, but you know what? I didn't mean X. I meant X plus. Well, why? But you're adding a language that if you don't do it by this date, you've waived it. I'm not asserting that at all. I'm saying I'm asking that this language just be enforced. I'm not asking you to do any of these things. These five arbitrators, is that the deal? No. That this modification to the, by the way, it also was done pursuant to paragraph 18 of the settlement agreement that the parties agreed to. And when they did, and this is not insignificant, because motions to compel arbitration are treated as two, six, four, nine motions to dismiss, the allegations are taken as true. They modified this settlement agreement. To the extent there was any ambiguity before, there's none now. There were none after these modification emails started to be sent. They more clearly and definitively identified one hard deadline after another, the selection date of an arbitrator, and then the arbitration date. Does it say you can't do anything more after that? No. Do they have to? No. It says this is the date to file the arbitration. That's it. And because that's so, it is a deadline. That's the only natural and ordinary construction that can be afforded, the language of these modification emails. For all these reasons, I ask the court to reverse the trial court's grant of the motion to compel arbitration and amend this matter for further findings. The findings are twofold. One, addressing more fully the modification emails that I have just described, but two, the court did not develop a record as it is required to in granting a motion to compel arbitration. It read the briefs. It made a decision. No evidentiary hearing, no affidavits, no evidence to support its decision. Other than its reading language into these modification emails, targeting them to either reconciliation number two or the arbitration provision or both, and then coming to a conclusion. There is no evidence in the record to support the trial court's finding. At the very least, this would be of a worse manner for the trial court to make those findings and require the Boutreau's parties to provide the court with evidence to support it. And then lastly, we ask for the attorney's fees, one, for the pinnacle parties, and two, to the extent that this court decides to affirm or uphold the decision of the trial court, that the court reverse the attorney's fees awarded. Again, a 10% flat discount without evaluating the fees, some of which were incurred not in the litigation but outside the litigation, preparing for an arbitration or negotiating with opposing counsel reconciliation number two. Those are subject to an award of fees, and that sort of scrutiny and that type of analysis should be undertaken by the trial court. And to the extent this court affirms the decision of the trial court on the motion to compel arbitration, we ask that you reverse with respect to the attorney's fees for further consideration consistent with the court's opinion. Thank you very much. Thank you. May it please the court, Benjamin Haskin on behalf of the defendant appellees. This appeal involves a straightforward issue of whether the circuit court properly heard and granted the Boutreau's party motion to compel arbitration at the first and earliest opportunity. And what's the standard of review here?  Your Honor, acknowledging your question before, it is certainly abuse of discretion in terms of interpreting the contract, and we think it is abuse of discretion in that everything involved here was interpretation of the settlement agreement and interpretation of the e-mails as itself creating a contract or not to. However, because there is no record of the proceedings in terms of the hearing on the motion to compel arbitration, to the extent the court finds that the trial court had to make what counsel referred to as an implicit finding of fact to reach the resolution, that would be by the abuse of discretion. Wait, so you're saying you agree that on the interpretation of the settlement agreement, it's de novo? Absolutely. Yeah, I think you used the wrong word. Oh, I apologize, and thank you for the question, Your Honor. Right. Thank you. The pinnacle parties filed a complaint in the declaratory judgment claiming that they are not obligated to participate in the arbitration based upon the contention that the buttress parties initiated arbitration after the deadline. This deadline, according to the pinnacle parties, was either in the settlement agreement or within these modification e-mails. Addressing and rebunking these theories require nothing more than looking at the language of the settlement agreement and then the language of these modification e-mails. So in the original agreement prior to the e-mails, the understanding of the appellants is that if you wanted to demand arbitration, you needed to do it within that 14-day period. Yes, Judge, that's their position, but it's simply not supported by the terms of the settlement agreement. And specifically, if we look at it, and it's multiple times in the record, I'm looking at C-291, there's two paragraphs the pinnacle parties are relying upon to reach their conclusion. The first is the procedure that revolves to create what's been called as reconciliation number two. This is page five of the settlement agreement. And to give some context, it was a very complex settlement agreement because it involved deeding properties from one entity to another. It created an escrow account, in which case deeds would be held to trust until the lenders had moved the mortgage from one party to another. So it was very complex, very sophisticated. It was each party was represented by counsel. But there was this one side issue, reconciliation number two, which had not been addressed. It must be a pretty big side issue to have all this litigation, right? I mean, this must be a substantial side issue, I assume. Without getting into the monetary amounts, it's not in the record. No, and that is why, on behalf of the butchers parties, we made every effort to avoid going to arbitration because we were hopeful that we would be able to reach it without litigation. But it unfortunately reached the point where the pinnacle parties took the position as they do that they will not agree to arbitration, leaving the butchers parties with no choice but to move to compel it. It's not de minimis, Your Honor, but not a giant amount that I think warrants where we are today. That was unfortunately outside of our control. Turning back to the settlement agreement, it was understood at this time that reconciliation number two had not been resolved. It required winding down these joint ventures, distributing its assets, and as well as its liabilities. But the parties agreed, let's not let this little issue hold up the settlement agreement. We will wrap everything up, and that will enable the underlying proceedings that were pending in the court, circuit court at that time, to be dismissed. But this created procedure to resolve reconciliation number two. So first, that's addressed within this paragraph on page five, paragraph 2H1, where it imposes an obligation to work in good faith. It says there is a hope that, sorry, in the event the parties are unable to resolve the dispute relating to reconciliation number two within 14 days, or upon a later date as agreed upon by parties, then it will go to arbitration as set forth in the procedure set forth in paragraph 3. So turning now to paragraph 3, this is undisputably the paragraph that handles the procedure for arbitration. Any reference to the language of the prior paragraph setting a deadline is not proper. The law specifically says when there is a paragraph that deals with the specific and a paragraph that deals with the general, the specific controls. Paragraph 3 deals with specific procedure for arbitration. To find that paragraph 3 imposes a deadline simply enforces a covenant that is not present. The only language that deals with setting forth a date to file arbitration is the language, such arbitration shall be initiated no earlier than 14 days after the execution of the settlement agreement. To accept the pinnacle party's argument that there's a deadline. So is it your position it could be five years later, there's no statute, it could be 10 years later, it could be? Well, you know, there's certainly, there is law about waiving your right to initiate arbitration. If you waive it five years, I think it would be a very strong argument that he would waive the right to initiate arbitration. Under sort of common law principles. Exactly, common law principles. But the agreement itself certainly imposes no such deadline. To accept the pinnacle party's argument requires taking out this phrase no earlier than and simply replacing it with either no later than 14 days after or on the 14th date. But that's simply not here. And obviously the court will not rewrite a contract to suit one of the parties. Moreover, a court will not enforce a condition not present on the face of a contract. This contract was drafted between counsel. Certainly, if there was a desire to impose a deadline to initiate arbitration, it easily could have been included. It would not have been difficult to include language shall be initiated no earlier than 14 days, but no later than either a date certain or 60 days after the settlement agreement, 90 days. It's not there. And there's a strong presumption in law that a condition that could have been included in a settlement agreement, but was not, would not be enforced. That's what we have here. There's simply no language in a settlement agreement supporting the theory that there is any deadline to initiate arbitration. The only date set forth by the plain language is lifting the bar to initiate arbitration. Meaning, let's try to resolve reconciliation number two amicably, in good faith. And in order to do that, let's remove the threat of initiating arbitration. Because this arbitration clause, you know, has a speed arbitration process. And it's set forth in the deadlines here. Once arbitration is submitted, you can't go back. Once arbitration is submitted, you have 14 days to file a written submission, seven days for a hearing, and seven days after that is a word. And simply, if you're going to go down that route, you've put it right here. You're not going to keep talking. Exactly. You're not going to keep talking. It's simply not plausible. What about their point that really procedurally what happened here by granting your motion to compel arbitration, the trial court entered summary judgment against them on their claim, on their deck action? I mean, that's in essence what happened here, right? I think the more proper analogy, Judge, is it was a 615 or 619 motion to dismiss. There's no outside evidence needed. All they're looking at is does the arbitration agreement impose a deadline? No. That didn't require outside evidence. That required a review of the arbitration agreement attached as a complaint. But they did decide the merits. I mean, they did decide the merits of the action. Absolutely decide the merits. But it required nothing more than looking at the pleading itself to, you know, dismiss the theory of the complaint. What does this mean the parties are to select the arbitrator on or before July 12th? At the time there was a hope that we could, you know, select the arbitrator by a date certain. Certainly the selection of an arbitrator doesn't involve the same commitment as committing to arbitration. There had been discussions of the arbitrator. But it can't be more that there is the fail-safe that if they fail to do so, the party initiating arbitration can select it. So you're separating the selection of the arbitrator from initiating the arbitration process. Correct, Judge, because you can't. Because this has a very specific arbitration procedure, you needed to find an arbitrator who would agree to abide by this, whether it be by schedules or by a willingness to abide by such a quick process. You're not abiding by JAMS or AAA standard. You're abiding by a procedure set forth. It was important to find an arbitrator who could accommodate that. But if you failed to do so, the party initiating had more freedom. And ultimately there was no agreement, and so the butchers parties, as initiating, did select an arbitrator and took it upon themselves and got a contract to abide by the schedule, and that was included in the demand for arbitration. But the fail-safe on that, if you don't select by date certain, really belies the argument that this is a date certain for the selection of the arbitrator implied that there's a date certain for the submission of arbitration. Or it could also imply that if you don't select by that date, then you have no right to arbitrate, because the next day, I believe, would have been the deadline to arbitrate according to the appellate's. I think the second part of that paragraph would eliminate that interpretation, because it says, it doesn't say if you fail to do so, but a legal arbitrator says if you fail to select by July 12, then the party initiating arbitration can simply choose whomever they want. And so there was four or five. Now, there's also a procedure in case none of them, because this was contemplated. It continues, if none of those four or five conserved, any of the other arbitrator, or on the Chicago Tribes, you have lots of choices. Unlimited, hopefully. But we were able to find one of the selected arbitrators and go with them. What's your view about fees for this appeal? The law provides that an appeal is a continuation of the action in the trial court when a party is entitled to fees as the prevailing party pursuant to a contract. The party is then entitled to fees on appeal. And there's a series of case law, which we cite in our brief, that says the proper procedure is not for the appellate court to decide it, but to send it back to the trial court for the specific purpose of awarding fees on appeal. So there can be more fees on top of fees? Unfortunately, yes. But based upon our view of the law and the contract, by enforcing the settlement agreement, we're entitled to our fees on this appeal, or the butchers' parties are. Once it's determined that the settlement agreement itself doesn't include any deadline to initiate arbitration, the argument that the e-mails then modify the settlement agreement really fails. There are four e-mails as counsel identified. And if you look through each one of them, at no point is there any discussion of a modification, of a deadline, of a date certain, of being barred, nothing of the sort. The first e-mail, which is on the record in page C-10, simply talks about extending the arbitration selection date. How it was argued that this created an extension or a modification to create a deadline is really unclear, but there's no reference. The second e-mail, on the record at page C-312, says we are extending the date to initiate arbitration to August 31st. The only possible interpretation or reading of this is that extending the date refers to the only date that has been agreed upon in the settlement agreement, which is the earliest date to initiate arbitration. By using the word extending, you're referencing a date already in place, which is this date to initiate arbitration. The third e-mail, which is the most comprehensive and detailed, is page C-315 to 316 on the record. It includes nine separate paragraphs setting forth a comprehensive summary of a meeting between the parties where specific action items have been hammered out and agreed upon. Detail is included. Paragraph six importantly references that the parties are working toward a resolution and that there is still an effort to agree upon reconciliation number two without resorting to arbitration. And on that end, counsel says we are extending the arbitration filing date to September 29th. It is the pinnacle party's contention that the use of the phrase arbitration filing date somehow modifies the clause in the settlement agreement to create what was the earliest date to now a deadline. And the argument is that it could not be more unambiguous. It's simply impossible to read this to understand the creation of the new contract. The modification of the contract requires all the same elements as the formation of the contract, offer, acceptance, consideration. Moreover, the modification of the contract requires the objective manifestation to modify that contract. There is no language indicating an objective manifestation to modify what was the earliest date to a deadline. If that was the intention here, and this was the pinnacle party's counsel who wrote this e-mail, if that was the intention, certain language would have been included. We agreed to modify the contract to create a deadline. Well, we agreed to create a deadline. We agreed that September 29th would be the last date to initiate arbitration. We agreed September 29th is a deadline. None of that language is used. Nothing is used to give any objective intent to modify the contract or to create a deadline. A contract can't be modified through unstated inferences or suppositions. It must be stated in definite terms, and there are no definite terms in this e-mail or in any of the e-mail. The question is not why would this language refer to the earliest date. It's why would it not? That's the only date they had agreed upon in writing, and the trial court rightfully said that these e-mails could not modify the contract to create a deadline to initiate arbitration. The final e-mail, which is the next page, C318, cut and pasted the same language. As counsel said, this was after he came in for Tom Petricchio, and because there was this desire to avoid arbitration, the Bucharest parties were willing to give a reasonable rope to try to resolve this. We're willing to wait more time before we reach a resolution. We will agree to extend it, but there is an endgame. And that's why this was the last extension of the earliest date. After this e-mail and after this passed, it became apparent that there would be no agreement to reconciliation number two, and arbitration would be necessary, and that's why the Bucharest parties in fact initiated arbitration pursuant to the procedure in the settlement agreement. The last point raised by the particular parties is that there are questions of fact that enabled this to be more akin to a sum of judgments. But as I referenced, there's no facts issue here. It is simply an interpretation of the settlement agreement, which is attached to the complaint, and of the e-mails attached to the complaint. At no point in the briefing on the motion to propel or beforehand did the particular parties ever raise the point that they thought discovery was necessary, that facts would be an issue. The motion to propel arbitration was filed seven days after the complaint was filed. Thereafter, there was numerous delays as the pinnacle parties moved for a substitution of judge to consolidate it and move it to the judge who had done the underlying case. Never was there a motion that discovery was needed. And when the response was filed, there was not an argument that discovery or facts were an issue because there were no facts of that issue. It's simply an interpretation of the settlement agreement and the modification e-mails. The issue of facts was raised for the first time in the motion of reconsideration with the affidavits of counsel and his client. On the one hand, the law plainly states that an argument raised for the first time in the motion of reconsideration is waived, and then affidavits submitted for the first time in the motion of reconsideration is waived. These affidavits only set forth counsel and the client's subjective intent in what they thought the modification e-mails meant, and yet subjective intent is never relevant. What a party means when they execute a writing is irrelevant. What is relevant is the language itself, and that's why even if these affidavits were properly submitted and they're not, they wouldn't change anything here. There are no facts in the record or outside the record that could possibly change the resolution. And for that reason, the circuit court properly granted the motion to compel arbitration. The circuit court properly awarded fees. That is an abuse of discretion standard. The arguments raised by the pinnacle parties were raised by the in the chapel and the trial court for the arguments and entered an award of fees. And as repeated earlier, we think fees should be awarded on this appeal as well. Any further questions? If we were to amend this back for a substantive disposition of the motion, what happens with the fees then? Depending on the language of the ruling, if you were to reverse, then I believe the fees would then be dependent upon the later disposition by the circuit court. If you were to affirm and amend simply for the termination of fees, the fees during the circuit court remain and we add on the fees in this appeal. Does that address your question, Your Honor? I have one last question, which is under this fee provision, why would you be entitled to fees before the complaint, the deck action was even filed? It's because, Your Honor, the wording of the fees in paragraph 6 says, and I'm looking at it in the middle, says fees can be awarded with respect to claims released in a settlement or to enforce the settlement agreement. Every action taken after the demand for arbitration was sent and every action taken in which the pinnacle parties refused to arbitrate was taken to enforce the terms and to enforce the mandatory arbitration provision. Okay. Anything else? Thank you, counsel. Thank you. I know I reserved some time, Your Honor. I'm not sure how much time I have. You can still have your three minutes. Thank you, Your Honor. To your last question, Justice Walker, the attorney fees should be awarded at each stage of the litigation. If you were to amend the fee provision, the fees that were awarded should be vacated to the brutalist parties below and the pinnacle parties will be entitled to theirs for getting to this point. The record cannot support the findings of the trial court based on how it reached its decision. As indicated in the briefs, the trial court has an onus, that's the Omni case, that's the Comdisco case, the Sergio case. The trial court has an onus on it to create a record to sustain every finding of fact, every conclusion of law that results in the grant of a motion to compel arbitration. It didn't do that. It read the agreement, looked at the modification emails and said, this is what I think it means. And that's the problem. I'm not asking this court to read any language into the modification emails. I'm not asking the court to read any additional language into the settlement agreement. The brutalist parties are. The modification emails were done pursuant to the modification provision of the settlement agreement, paragraph 18. It says it right in the complaint. Pursuant to that provision, the pinnacle parties modified the agreement with the brutalist parties' confirmation and set dates certain. To the extent they were ambiguous or unclear before, they cannot be anything but certain based on these modification emails. And when you say that there's a date to initiate arbitration, that's it. When there's a date to file the arbitration, it means what it says. What the brutalist parties, as the trial court, which it did and they're asking you to do now, is read additional language into that provision. Under reconciliation number 2, it says within 14 days or such other date as agreed to by the parties. It says that right in reconciliation number 2, at 2H, Romanette 2. What it doesn't say in these modification emails is, pursuant to reconciliation number 2 or pursuant to paragraph 2H2, tying it back to the language in that provision or tying it back to the language artfully and unartfully drafted in the arbitration provision. What it says on its own is that there's a date to set the arbitration, there's a date to file the arbitration. That's it. If you don't do those two things by those dates, you're done. And it's consistent with the overall theme of that agreement. It doesn't say that you're done, does it? No, but I'm not sure that I've seen an arbitration provision or any provision similar that says, and by the way, if you don't do what you're supposed to do, you're really screwed. You're out. You're done. Finito. I've not seen that. I've not included it in the agreements that I've drafted either. I'm saying that clearly and then when he talks. All I'm asking for this court to do is enforce it as written. Plain contract construction principles. Just enforce it as written. There's a date to file. There's a date to select the arbitrator. When you didn't do it, you're done. It's the only reason to have the date. If it was intended to be an initiation date, and I know counsel has pointed out, as he did below, this was just a date to initiate the arbitration. Well, that falls in the face of the July 12 date. This trial court should not have stuck its head in the sand. He wishes to divorce the arbitration selection date with the actual filing of arbitration. So we had to file or select an arbitrator by July 12, but you could file that arbitration six months later, nine months later. He agreed not five years later. He thought watches might be a problem. But if there's no deadline, then there's no deadline. That's what they're asking the court to conclude. All I'm asking to do is render and give a construction to both the reconciliation between the arbitration provision that is both consistent with the desire to separate quickly and finally, and also based on its plain language. These modification emails, the trial court necessarily had to say and read into, this is tied back to reconciliation number two. This modification is tied back to the arbitration provision. But it doesn't say it anywhere there, and there isn't an affidavit by the butchers' parties. There isn't a verified petition to support that conclusion either. The trial court did not develop the record to support its findings. For that reason alone, this needs to be reversed and remanded for that purpose. But as to these questions of fact, these are them. To the extent these are based on the butchers' parties, tied or tethered to some of the provisions, there needs to be some evidence to support it. You can't just throw it in or read it in. I agree with counsel's statement earlier. The court should not be rewriting contracts or writing language that easily could have been inserted but was not. That's what we have here. These were paragraph 18 modification emails, nothing more. And all I'm asking for this court to do is read them according to the plenary language and enforce them according to the saying. The trial court did not. They should be reversed. Thank you, counsel. Thank you both. We'll take the matter under advisement, and you will hear from us in due time. Thank you. We stand in short recess.